# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| MANDY CURTIS,<br><br>    Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,<br>**Acting Commissioner of Social Security**<br><br>    Defendant. | Case No. 4:17-CV-1524-ERW |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying the application of Mandy Curtis ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II, 42 U.S.C. §§ 401, *et seq.* and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* Plaintiff has filed a brief in support of the Complaint (ECF 15), Defendant has filed a brief in support of the Answer (ECF 20), and Plaintiff has filed a reply brief (ECF 21).

### I. PROCEDURAL HISTORY

Plaintiff filed her applications for DIB and SSI under Titles II and XVI of the Social Security Act on December 5, 2013 (Tr. 164-171). Plaintiff was initially denied relief on February 25, 2014, and she filed a Request for Hearing before an Administrative Law Judge ("ALJ") (Tr. 107-111, 114-118). After a hearing, by a decision dated January 13, 2016, the ALJ found Plaintiff was not disabled (Tr. 18-30). Plaintiff filed *Request for Review of Hearing Decision* on February 19, 2016 (Tr. 12). On March 22, 2017, the Appeals Council denied Plaintiff's request for review (Tr. 1-4). Plaintiff appealed to the United States District Court for the Eastern District of

Missouri on May 17, 2017 (ECF 1). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2012, and Plaintiff has not engaged in substantial gainful activity since March 1, 2012, the alleged onset date of her disability (Tr. 20). The ALJ found Plaintiff has the severe impairments of discogenic and degenerative disorders of the back, curvature of the spine, an affective disorder, an anxiety disorder, and a personality disorder (Tr. 20). The ALJ found no impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 20).

The ALJ conducted a hearing with Plaintiff, her counsel, and a vocational expert on November 16, 2015 (Tr. 36). At the beginning of the hearing, Plaintiff's counsel indicated there were additional records from Hermann Hospital, Missouri Baptist Sullivan, and Advanced Pain Center which were substantial (Tr. 40). The ALJ agreed to keep the record open for thirty days to allow for the consideration of those records (Tr. 40).

At the hearing, Plaintiff testified she has a high school education and graduated from Technology Education Village, but never took the final exam to be "certified" (Tr. 41-42). The last day Plaintiff worked was March 1, 2012 (Tr. 42). Prior to her resignation, Plaintiff worked for Check Free Services Corporation for about three years answering emails (Tr. 42-47). She worked for Connecticut Journal Life Insurance Company, also known as Cigna, for about two years answering questions over the phone, and she worked for Magnet for about two or three years doing art approval[1] (Tr. 42-47). Plaintiff possesses a driver's license, driving only

---

[1] The vocational expert testified Plaintiff's prior work is classified by the Dictionary of Occupational Titles ("DOT") as collections clerk, copy holder, and insurance clerk (Tr. 65).

occasionally (Tr. 62). The vocational expert testified Plaintiff's prior jobs are classified as insurance clerk, collections clerk, and copy holder under the Dictionary of Occupational Titles (Tr. 65-66). Plaintiff's counsel contends Plaintiff suffered from a combination of physical and psychiatric issues, including disabling pain, that render her incapable of sustaining full time work (Tr. 40-41).

Plaintiff testified she had back surgery to straighten her spine in 2010, and claims "it didn't help the way it was supposed to" (Tr. 51). In addition to surgery, Plaintiff has undergone physical therapy, injections, burning of the nerves, wearing a brace, a branch block[2], epidurals, and trigger shots (Tr. 59). Plaintiff also testified she is taking medication for anxiety, nerve pain, chronic pain, anger management, and mood swings. (Tr. 47-49).

Plaintiff lives with her boyfriend of ten years, and her children including a five year old, a three year old, and four teenagers from prior relationships (Tr. 50). Plaintiff testified she gets angry often and has a difficult time controlling her mood (Tr. 53-55). Plaintiff relies on her children and therapist to help her when she gets angry (Tr. 53-55). Plaintiff's home has a series of half-done projects, and the laundry and cooking are done by the children (Tr. 55-56).

The vocational expert, Dr. Darrell Taylor, testified Plaintiff cannot perform any of her past work; however she is able to work as a hand packer, a worker assembly position, and as an unskilled surveillance system monitor (Tr. 66-67). Dr. Taylor also testified a person with one absence per month over a two month period would result in termination and that being off task as little as fifteen percent during the day would result in termination (Tr. 68).

After considering the entire record, including Plaintiff's testimony, the ALJ determined Plaintiff has the Residual Functioning Capacity ("RFC") to perform sedentary work where she

---

[2] A branch block is a procedure where an anesthetic is injected near the nerves of the back to alleviate pain. Plaintiff received diagnostic, temporary medial branch blocks (Tr. 746).

3

can no more than occasionally climb ramps and stairs, stoop and crouch (Tr. 23). Plaintiff can never climb ladders, ropes, and scaffolds, or kneel and crawl, and should avoid all exposure to hazards such as unprotected heights and dangerous machinery (Tr. 23). Plaintiff should have only occasional exposure to vibration and extremes of cold, and she is only capable of performing simple, routine tasks in an environment where there are only occasional work place changes and where contact with supervisors, co-workers, and the general public is occasional (Tr. 23). The ALJ found Plaintiff is unable to perform any past relevant work[3] but she can perform simple, routine tasks in an environment where there are only occasional workplace changes, and where contact with supervisors, co-workers, and the general public is occasional (Tr. 25). The ALJ found there are jobs which exist in significant numbers in the national economy Plaintiff can perform, including hand packer, a production worker assembler, and surveillance systems monitor (Tr. 29). Thus, the ALJ's conclusion for Plaintiff was "not disabled" (Tr. 30). Plaintiff appeals, arguing the ALJ failed to properly consider the opinions of Plaintiff's treating mental health sources and failed to properly consider Plaintiff's credibility when making a determination (ECF 15).

### III. LEGAL STANDARD

Under the Social Security Act, the Commissioner must follow a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, first the claimant cannot be engaged in "substantial gainful activity" to qualify for disability benefits.

---

[3] As noted above, Plaintiff's past relevant work includes work as a collections clerk, a copy holder, and an insurance clerk (Tr. 29, 65).

20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is *per se* disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3.

"The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record *de novo*. *Cox*, 495 F.3d at 617. Instead, the district court must simply determine whether the quantity and quality of evidence is enough so a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

## IV. DISCUSSION

In her appeal of the Commissioner's decision, Plaintiff raises two issues. First, Plaintiff asserts the ALJ erred by failing to properly consider the opinions of Plaintiff's mental health sources, including the opinions of Dr. Lorance and Dr. Salau (ECF 15 at 1). Second, Plaintiff argues the ALJ erred by failing to properly assess Plaintiff's credibility (ECF at 11). Specifically, Plaintiff contends the ALJ erred when incorrectly determining Plaintiff's ability to care for her home, opining on Plaintiff's lack of prolonged hospitalization, and commenting that Plaintiff's treating physicians had not indicated she should not seek work (ECF 15 at 11).

The Court finds substantial evidence does not support the ALJ's findings regarding Plaintiff's lack of credibility and the ALJ erred in properly considering the credibility of Plaintiff's testimony regarding inconsistencies in Plaintiff's testimony regarding her daily activities and ability to care for her family.

The *Polaski* case details five factors an ALJ is required to examine when analyzing a Plaintiff's subjective complaints of pain including the claimants daily activities, the duration, frequency and intensity of pain, dosage, effectiveness, and side effects of medication,

7

precipitating and aggravating factors, and functional restrictions. *Eichelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir. 2004) citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ is not required to discuss each factor but must acknowledge and consider them before discounting a Plaintiff's subjective complaints. *Id.* "The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints." *Id.* "The key issue is whether the Commissioner's decision is supported by substantial evidence in the record as a whole." *Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006) citing *Sultan v. Barnhart,* 368 F.3d 857, 862 (8th Cir. 2004). The ALJ is in a better position to evaluate credibility, therefore the Court defers to her credibility determinations, as long as they were supported by good reasons and substantial evidence. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Substantial evidence is "less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006) citing *McKinney v. Apfel,* 228 F.3d 860, 863 (8th Cir. 2000). When determining whether the evidence is substantial, the Court considers evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Id.*

When making a determination regarding Plaintiff's credibility in this case, the ALJ placed a heavy reliance on Plaintiff's testimony regarding her ability to do tasks of daily living (Tr. 22). In her opinion, the ALJ states "[Plaintiff] testified she was able to care for her six children two of which are one year and three years old. She reported she was able to prepare simple meals and reported no problems with personal care. She stated she drives occasionally and goes grocery shopping two or three times a month" (Tr. 22, 27). When making her determination regarding the "paragraph B" criteria associated with a mental health

8

determination, the ALJ stated Plaintiff had moderate difficulties in social functioning and moderate difficulties with regard to concentration, persistence, or pace (Tr. 22). The ALJ also noted Plaintiff had not experienced any episodes of decompensation[4] of an extended duration (Tr. 22). The ALJ concluded because Plaintiff's mental impairments "do not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration, the 'paragraph B' criteria are not satisfied (Tr. 22).

The ALJ's opinion also outlined "the record establishes that none of [Plaintiff's] treating physicians have ever recommended that she not seek employment in the normal course of treatment or that she has required prolonged hospitalization (Tr. 27). Additionally, the ALJ noted, "the [Plaintiff] testified at the hearing that she planned on leaving her boyfriend indicating she must believe she is capable of taking care of her six children and maintaining a household alone. This contradicts her previous testimony that she needed help caring for her children and completing household tasks" (Tr. 28).

While subjective complaints can be discounted if there are inconsistencies in the evidence as a whole, here the ALJ failed to specifically and accurately detail the inconsistencies in Plaintiff's testimony and the record which caused the ALJ to reject Plaintiff's complaints. *Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995). Specifically, the ALJ discounted Plaintiff's subjective complaints because she believed them to be inconsistent with her ability to care for her family and her daily activities (Tr. 18-30).

Contrary to what is outlined in the ALJ's opinion, Plaintiff testified she has "a five year old and a 3 year old" and has "four teenagers that are wonderful because they help [her] so

---

[4] "Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two)." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)(4).

much" (Tr. 50). After waking up, Plaintiff testified after she wakes up she watches the news and then makes sure her 5 year old gets up, but her "15 year old and 16 year old pretty much help [the five year old] get ready" (Tr. 50). Plaintiff also testified "depending on how [she] is for the day" her live-in boyfriend will either help her with the 3 year old, or her dad, aunt, or sister might have to come out and help her (Tr. 50). When asked whether she was "able to take a shower every day", Plaintiff responded, "I don't. I don't even want to get up half the time" (Tr. 55). Plaintiff testified she is not able to do the laundry herself and the kids will take the laundry downstairs, wash it, and bring it back upstairs (Tr. 55-56). Plaintiff testified she is not able to cook for the family and the kids take care of the cooking (Tr. 57). Her three year old is fed by her boyfriend when he comes home for lunch and during the day she keeps the three year old safe by not letting her hurt herself by playing with knives or going outside (Tr. 57).

Plaintiff testified she only goes to the grocery store if her boyfriend is "really busy" and she usually will have her sister or dad go with her to help her with the loading and unloading of the cart (Tr. 61-62). She testified she does not drive often and she only "like[s] to drive [herself] to the doctor" about seven miles away (Tr. 62). Regarding Plaintiff's boyfriend, she testified that he comes home to make sure she can function with their three year old, he goes grocery stopping, and makes sure the house functions (Tr. 57). When asked by the ALJ about a note in her record which indicated Plaintiff planned to leave her boyfriend, Plaintiff responded saying:

> Yes, we had a lot of problems because he just seems so uncaring until he actually, I guess I think he really may have talked with someone. I think maybe my friend talked to him about everything and explained that it's not really my fault, that I am trying, that I am doing what I can to be more useful and not just angry and hurtful and just sitting around. That I'm not just taking advantage of -- I'm not being lazy. I think he just talked to someone. But, he was being so mean and hurtful and he would say stuff. I'm like, I can't help it. I don't know what I'm doing. I can't stop. I don't go anywhere. I can't turn this part off. I'm sorry. I'm sorry I don't go to the store and I can't cook. I showed him the x-rays of my back. Like, this is what it looks like. This hurts all the time. And, I think he just sort of quietly understood. If not, he's pretending because he actually got better and it just

10

happened where he was supportive, he wasn't supportive, is supportive, so. I don't know. Unless he's just faking, which I don't care if he is. At least he's helpful right now. My kids, it's so unfair to them though (Tr. 57-58).

There is nothing in the record which indicates Plaintiff was actually planning on leaving her boyfriend. As a result, the ALJ's inference that Plaintiff's interest in leaving him indicates she believes she is capable of taking care of the children and the household on her own is not supported by substantial evidence.

Additionally, there is no substantial evidence in the record which supports the conclusion Plaintiff's testimony regarding her daily activities was somehow not credible. Plaintiff testified about her challenges doing laundry, visiting the grocery store, driving, and taking care of her children. She testified about her reliance on the older children to support the household and her need for assistance from family members to complete basic household tasks. As a result, Plaintiff's testimony regarding her daily activities does not provide substantial evidence to support the ALJ's rejection of Plaintiff's credibility as being inconsistent with the record as a whole.

In sum, the ALJ erred by failing to specifically and accurately detail the inconsistencies in Plaintiff's testimony and the record which caused the ALJ to reject Plaintiff's subjective complaints and find her not credible. Therefore, there is not substantial evidence and good reasons to support the ALJ's credibility determinations and remand is required.

V. **CONCLUSION**

For the foregoing reasons, the Court finds the ALJ's decision was not based on substantial evidence in the record as a whole. Although the Court does not make an ultimate determination regarding Plaintiff's disability, the Court finds this case should be reversed and remanded. On remand, the ALJ is directed to reconsider Plaintiff's testimony regarding her

ability to care for her family and her daily activities; and proceed with the next steps of the sequential evaluation process.

**IT IS HEREBY ORDERED** that this action is **REVERSED AND REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration in accordance with this Memorandum and Order.

A separate Judgment will accompany this Order.

Dated this 7th day of January, 2019.

*E. Richard Webber*

**E. RICHARD WEBBER**
**SENIOR UNITED STATES DISTRICT JUDGE**